UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00009-TBR

IRVING MATERIALS, INC.                                                                         Plaintiff

v.

ANGELO IAFRATE CONSTRUCTION COMPANY, *et al.*                    Defendants

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon the Motion to Compel Arbitration of Defendants Angelo Iafrate Construction Company and The Continental Insurance Company (collectively, "Iafrate"). (Docket No. 38.) Plaintiff Irving Materials, Inc. ("IMI") has responded, (Docket No. 42), and Defendants have replied. (Docket No. 43.) Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below, the Court will DENY Defendants' Motion.

**Factual Background**

Plaintiff IMI is a concrete materials supplier. (Docket No. 1 at 3.) Defendant Iafrate is a paving and concrete construction subcontractor. (Docket No. 1 at 3.) This dispute arises from IMI's sale of concrete to Iafrate for the paving required in the construction of the MH-47 Aviation Maintenance Hangar ("the Hangar") in Fort Campbell, Kentucky. (Docket No. 1 at 3.) The United States Army Corps of Engineers entered into a contract with general contractor Hensel Phelps Construction Company ("Hensel Phelps") for construction of the Hangar. (Docket No. 1 at 3.) Hensel Phelps subcontracted with Webb Engineering, Inc. for the provision of the supplies, materials, and labor needed for the paving work involved in the construction of the Hangar. (Docket No. 1 at 3.) Webb Engineering then executed a "sub-subcontract agreement" with Iafrate under which Iafrate was to perform the paving work for the Hangar.

1

(Docket No. 1 at 3.) Iafrate purchased materials from IMI. (Docket No. 1 at 3.) As part of the sale, IMI and Iafrate entered into a credit agreement. (Docket No. 1 at 3.)

Under the Credit Application, Iafrate was authorized to receive concrete materials from IMI on credit upon its request. (Docket No. 1 at 3.) In May 2013, Iafrate completed a Purchase Order with IMI for $1,099,654.60. (Docket No. 1 at 3.) The Purchase Order between the parties contains an integration clause within which the parties expressly incorporate the Credit Application. (Docket No. 1 at 3.)

IMI alleges that the concrete materials delivered to Iafrate "conformed to the terms" of the Purchase Order and "satisfied all conditions precedent" to the receipt of payment. (Docket No. 1 at 4.) Believing that it satisfied its obligations under the Purchase Order, IMI sent Iafrate an invoice for the concrete materials it delivered. (Docket No. 1 at 4.) IMI alleges that Iafrate has not paid for $425,841.82 plus additional charges that continue to accrue such as interest. (Docket No. 1 at 4.)

Iafrate alleges that IMI had difficultly mixing the concrete materials to conform to the "flexural strength standards." (Docket No. 38-1 at 2.) According to Iafrate, "[t]he mix design process lasted . . . from June of 2013 through February of 2014." (Docket No. 38-1 at 2.) During this time, Iafrate states that it communicated to IMI that IMI would be responsible for any additional costs that resulted from IMI's efforts to conform its concrete materials to the required strength standard. (Docket No. 38-1 at 2.) The Army Corps of Engineers provided conditional approval of IMI's concrete mixture in February 2014, but on May 15, 2014, Hensel Phelps reported problems with the already poured concrete, as it was not conforming to certain strength standards. (Docket No. 38-1 at 2-3.) Iafrate alleges that to solve the problem, IMI's engineer suggested that the parties use a different testing method. (Docket No. 38-1 at 3.) According to Iafrate, while the parties sought approval from the Army Corps of Engineers for the alternative testing method, Iafrate suspended paving and sent another notice to IMI that any costs incurred as a result of the difficulties would be assessed to IMI (Docket No. 38-1 at 3.) The Army Corps of Engineers did eventually accept the alternative testing method, but Iafrate argues that it incurred

additional costs due to the nonconformity of IMI's concrete materials. (Docket No. 38-1 at 3.) Iafrate deducted the additional costs it incurred from the amount owed to IMI. (Docket No. 38-1 at 3-4.)

As a result of Iafrate's assessment of additional costs incurred to IMI, IMI filed suit in this Court on January 13, 2014. (Docket No. 43 at 2.) IMI's complaint asserts four claims against Iafrate Construction including Breach of Agreement, Unjust Enrichment, Bond Claim, and Conversion/Punitive Damages. (Docket No. 1 at 4-7.) The parties later agreed on a payment of $273,278.00 which moots IMI's claim for conversion (Docket No. 38-1 at 4.)

The contract between IMI and Iafrate contains two arbitration clauses, one of which is in the Purchase Order and the other one is in the Credit Application. (Docket Nos. 38-2 at 4; 38-3 at 2.) The arbitration provision under the Credit Application states:

> **Any controversy, claim or dispute between the parties, directly or indirectly, which in any manner relates to the performance of this agreement or the material provided by IMI and/or or any and all claims concerning the material provided by IMI shall be settled solely by arbitration and in accordance with the applicable rules of arbitration found in Indiana Rules of Alternate Dispute Resolution. The only issue not subject to the requirement of arbitration shall be IMI's right to collect for any monies owed and expenses incurred in the collection thereof through the legal process.** The parties, therefore, agree that any controversy, claim or dispute between the parties, other than the collection of monies owed for the payment of the material, shall be resolved and the parties shall be bound by the decision of a three-person arbitration panel. IMI and the contractor/applicant shall each select one impartial attorney to act as an arbitrator. The two arbitrators shall then select a third attorney to form the panel. Each party shall pay for the expense of the arbitrator he selected. The parties shall divide evenly the expense of the third arbitrator. The arbitration shall be conducted in accordance with the rules and provisions of the Indiana Rules of Alternate Dispute Resolution. The judgment upon the award rendered by the arbitrators will be enforceable by any court of competent jurisdiction. All parties hereto specifically agree that any and all arbitration proceeding arising hereunder shall be held in the county of sale unless the parties agree to another location.

(Docket No. 38-3 at 2.) Alternatively, the arbitration provision in the Purchase Order states:

> **Seller [IMI] agrees that the Buyer [Iafrate] shall have the exclusive right to decide whether disputes, controversies, or claims arising out of or relating to this Purchase Order shall be settled in accordance with the rules of the American Arbitration Association or through litigation in a court of competent jurisdiction.** Buyer shall take into consideration whether the claim

3

> affects third parties, such as other suppliers, owners, contractors and the financial aspects in deciding whether to arbitrate with the Seller or require the Seller to litigate the claim. Should the Buyer agree to arbitrate the claim or controversy, the award may be entered in any court having jurisdiction thereof and qualify as Statutory Arbitrating under the laws and court rules of any court having jurisdiction over the parties. In the event of any controversy, Seller shall continue completion of the Purchase Order if requested by Buyer with final settlement of the controversy to be made in the forum chosen by the Buyer. In any event, notice of Request to Arbitrate by Seller must be made within twenty (20) days of the claim or controversy and be made in writing, and in such a way as to completely appraise the Buyer of the total claim of the Seller. Buyer shall advise the Seller of his choice to arbitrate or not, within forty-five (45) days of receipt of such notice.

(Docket No. 38-2 at 4.) Iafrate's Motion seeks to compel arbitration under both of these provisions. (Docket No. 38-1 at 4-9.) IMI alleges that Iafrate has waived any right to arbitration as it sent a letter to IMI on January 13, 2014 stating that it had chosen litigation in Michigan Circuit Court. (Docket No. 43 at 2.)

**Legal Standard**

Congress enacted the United States Arbitration Act of 1925, more commonly referred to as the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, in response to the common law hostility toward arbitration and the refusal of many courts to enforce arbitration agreements. The United States Supreme Court has since interpreted the FAA as codifying "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). The Supreme Court has further stated that the FAA's underlying purpose is to put arbitration agreements "upon the same footing as other contracts." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The FAA establishes a procedural framework applicable in both federal and state courts and also mandates that substantive federal arbitration law be applied in both. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

Section 2 of the FAA, which governs the enforceability of arbitration agreements, provides that a written agreement to arbitrate disputes arising out a contract involving interstate commerce "shall be

4

valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2. Whereas § 2 of the FAA mandates enforcement, § 3 permits a party seeking to enforce an arbitration agreement to request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. 9 U.S.C. §§ 2–3. Section 4 goes on to provide the mechanism by which a party may petition a court to compel arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

*Id.* § 4. Thus, before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). Such review, the Sixth Circuit advises, requires the Court to determine first whether "a valid agreement to arbitrate exists between the parties," and second whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at 624) When determining whether or not a valid agreement to arbitrate exists, it is important to note that "[c]ontractual arbitration provisions are treated like other contractual provisions and such agreements are enforced, unless the parties waive their right." *Gordon v. Dadante*, 294 F. App'x 235, 238 (6th Cir. 2008).

## Discussion

Iafrate argues that both the arbitration clause in the Credit Application and the arbitration clause in the Purchase Order apply to this dispute and require this Court to stay the cause of action until the conclusion of arbitration. (Docket No. 38 at 1.) While IMI does not directly question the applicability of one or both arbitration clauses to this action, IMI contends that Iafrate expressly waived its right to

5

arbitration under the Purchase Order's arbitration clause. (Docket No. 42 at 3-4.) Accordingly, this Court must determine the applicability of either or both arbitration clauses to this action and whether or not Iafrate waived its right to arbitration under either clause.

There is no dispute in this case that the parties intended to make a contract. The interpretation of a contract is a matter of law. *Detroit Radiant Prods. Co. v. BSH Home Appliances Corp.*, 473 F.3d 623, 627 (6th Cir. 2007). Here, the parties stipulate through the Credit Application that their "agreement shall be governed and construed in accordance with the laws of the state from where the material is sold." (Docket No. 38-3 at 2.) IMI sold the concrete materials to Iafrate in Kentucky as is evidenced by the application of Kentucky sales tax in the Purchase Order and by the fact that the goods were shipped to Fort Campbell, Kentucky. (Docket No. 38-2 at 1.) Thus, the parties' agreement is governed by Kentucky law.

Within the Purchase Order which expressly integrates the Credit Application, the parties stipulate that it is the "sole and entire agreement" between them. (Docket No. 38-2 at 3.) In its Motion to Compel Arbitration, Iafrate argues that the arbitration provision in the Credit Application and the arbitration provision in the Purchase Order apply to this dispute and require the Court to compel arbitration. (Docket No. 38-1 at 4-9.) However, the arbitration provisions are inherently incompatible. Under the arbitration provision in the Credit Application, "any controversy, claim or dispute between the parties" relating to performance of the agreement or the materials provided by IMI is to be settled "solely by arbitration." (Docket No. 38-3 at 2.) However, any dispute over IMI's right to collect payment for "any monies owed and expenses incurred in the collection thereof" is subject to resolution through "the legal process" not arbitration. *Id.* The Credit Application also requires the arbitration proceedings "be conducted in accordance with the rules and provisions of the Indiana Rules of Alternate Dispute Resolution." *Id.* Conversely, the arbitration provision in the Purchase Order provides that Iafrate, the buyer, has "the exclusive right to decide whether disputes, controversies or claims arising out of or relating to [the] Purchase Order" are settled through arbitration "in accordance with the rules of the American Arbitration Association or through litigation in a court of competent jurisdiction." (Docket No. 38-2 at 4.)

6

These arbitration provisions cannot both be applicable to this action because they are mutually exclusive. While one provision places the choice of whether or not to arbitrate in the exclusive control of one party to the agreement, Iafrate, the other provision determines whether or not a dispute is resolved by arbitration based upon the subject matter in question. Furthermore, the provisions require that the arbitration proceedings comply with two different sets of rules, either the Indiana Rules of Alternate Dispute Resolution under the Credit Application or the rules of the American Arbitration Association under the Purchase Order. As the arbitration provisions at issue are irreconcilable and cannot be applied simultaneously, the Court must determine which provision properly controls in this action.

"Because arbitration agreements are fundamentally contracts," the Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)). Thus, the Court will determine the enforceability of the arbitration provisions in question under Kentucky's common law concerning ambiguities in contractual provisions.

According to the Supreme Court of Kentucky, "the construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) (citation omitted). A fundamental principle of contract interpretation is that "[t]he primary object in construing a contract . . . is to effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002) (first citing *Withers v. Commonwealth, Dep't of Transp.*, 656 S.W.2d 747, 749 (Ky. Ct. App. 1983); then citing *Wilcox v. Wilcox*, 406 S.W.2d 152, 153 (Ky. 1966)). Kentucky law commands that "a contract is to be interpreted as a whole and the entire instrument considered to determine the meaning of each part." *Int'l Union of Operating Engineers v. J. A. Jones Const. Co.*, 240 S.W.2d 49, 54 (Ky. 1951) (citing *Siler v. White Star Coal Co.*, 226 S.W. 102, 104 (Ky. 1920)). When a written contract is unambiguous, it "will be enforced strictly according to its terms." *Frear,* 103 S.W.3d at 106 (quoting *O'Bryan v. Massey–*

*Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). However, when a contract contains ambiguous language, "the Court will give 'great weight' to the parties' actions, subsequent conduct, or other declarations indicating their mutual intent and understanding." *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 887 (E.D. Ky. 2014) (citations omitted). According to the Kentucky Supreme Court, a contract is ambiguous if it is "capable of more than one different, reasonable interpretation." *Cent. Bank & Trust Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981); *see also Cantrell Supply*, 94 S.W.3d at 385 ("A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."). A contract may contain either a patent or latent ambiguity. *Journey Acquisition-II,* 39 F. Supp. 3d at 890. "A latent ambiguity is one which does not appear upon the face of the words used, and it is not known to exist until the words are brought in contact with the collateral facts." *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Slusher*, 325 S.W.3d 318, 322 (Ky. 2010)). Alternatively, a patent ambiguity is "an uncertainty which appears *on the face of the instrument*." *Roberts v. Roberts' Ex'r*, 186 S.W.2d 801, 803 (Ky. 1945) (emphasis added). Here, there is a patent ambiguity as the two arbitration provisions in question are mutually exclusive and conflicting on their face.

Generally, when interpreting a contract, "conflicting clauses should be construed to harmonize with each other if the harmonization can consistently and reasonably be done." *City of Owensboro v. Kentucky Utilities Co.*, No. CIV.A. 4:04-CV-87-M, 2005 WL 1719949, at *4 (W.D. Ky. July 22, 2005) (first citing 17A Am.Jur.2d Contracts § 384; then citing *International Union*, 240 S.W.2d at 56). However, "[i]f two clauses are so 'repugnant' to one another that there is no way that they can be harmonized, then one must fail." *Id.* When faced with the question of how to reconcile a patent ambiguity in a contract due to conflicting clauses, courts generally apply one of the following three approaches: they "either give preference to the earlier clause when it conflicts with the later clause, the more important or dominant of two conflicting clauses, or the more specific of two clauses that conflict with one another." 11 Williston on Contracts § 32:15 (4th ed.). Kentucky follows the second approach. *See International Union*, 240 S.W.2d at 56; *Black Star Coal Corp. v. Napier*, 199 S.W.2d 449, 451 (Ky. 1947). Kentucky's

8

Highest Court has established that "[w]here repugnancy is found between clauses, the one which essentially requires something to be done to effect the general purpose of the contract is entitled to greater consideration than the other." *Id.* (citations omitted). Further, "[t]he whole agreement should, if possible, be construed so as to conform to an evident consistent purpose." *Id.* (stating that its decision was in accord with *Black Star Coal Corp. v. Napier*, 199 S.W.2d 449 (Ky. 1947)).

The patent ambiguity in this case concerns conflicting arbitration provisions that are essentially "boiler plate" language. These provisions are not critical to the general purpose of the contract—the sale of concrete materials for the paving of the Hangar—and, consequently, determining which provision furthers the contract's general purpose is difficult. In fact, though Kentucky has a number of general principles that courts use in their interpretation of contracts, even these enduring tools of contractual interpretation do not greatly aid this Court in its determination of which arbitration provision should apply. The Court will briefly address these principles. The first principle is that when a contract contains an ambiguity, the ambiguous language generally is to be construed against the drafter. *Cheshire v. Wright*, 237 S.W.2d 52, 54 (Ky. 1951); *Edwards v. Carlisle*, 179 S.W.3d 257, 261 (Ky. Ct. App. 2004) (stating that ambiguities in a contract should be construed against the drafter in the context of insurance contracts and lease agreements). In this case, this principle is not particularly helpful as Iafrate drafted the arbitration provision in the Purchase Order (Docket No. 38-2 at 4), and IMI drafted the arbitration provision in the Credit Application. (Docket No. 38-3 at 2.) Another principle of contract interpretation commands that "[w]hen inconsistencies appear on the face of the document, handwritten or typewritten additions or alterations intentionally added by the parties will prevail over preprinted terms, and handwriting prevails over typewriting." *Clair v. Hillenmeyer*, 232 S.W.3d 544, 549 n.11 (Ky. Ct. App. 2007). "However, it is only where the written or typed words and the printed words are so contradictory that an ambiguity arises that one must yield to the other." *Id.* (citing 17A C.J.S. Contracts § 325). Here, the provisions in conflict are both typewritten and preprinted, and therefore, this principle does not apply. While this principle of construction does not directly apply, it is significant that the Purchase Order

9

contains several handwritten notations by the parties, including the handwritten and initialed inclusion of the Credit Application in the integration clause. (Docket No. 38-2 at 3-4.) The parties handwritten and initialed changes to the form language in the Purchase Order suggest that the parties read the preprinted form language and made the changes that the parties found to be necessary. Another principle of interpretation is that the "definite and precise will prevail over the indefinite." *International Union*, 240 S.W.2d at 56. The arbitration provisions at issue are both precise and clear but nevertheless in direct conflict. Lastly, "an interpretation of the contract that gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Journey Acquisition-II*, 39 F. Supp. 3d at 887 (citations omitted) (internal quotation marks omitted). As the arbitration provisions are mutually exclusive, this Court's interpretation will cause one of them to have "no effect." *Id.* While this is not ideal, the two provisions cannot be reconciled.

Though the general principles of contract interpretation do not elucidate which arbitration clause should prevail, the fundamental principle of contract interpretation which is to effectuate the intentions of the parties is helpful to this Court. When effectuating the parties' intent, "the court must take into account the circumstances under which the agreement was executed, attempt to discern the effect that the parties intended, and reconcile inconsistent terms where possible." *Tricon Global Rest. v. Johnson*, No. 2005-SC-0451-WC, 2006 WL 1652576, at *4 (Ky. June 15, 2006) (first citing *Black Star Coal Corp. v. Napier*, 199 S.W.2d 449 (Ky. 1947); then citing *Lockwood's Trustee v. Lockwood*, 62 S.W.2d 1053 (Ky. 1933)). The Credit Application drafted by IMI appears to be much more of a preliminary document as Iafrate filled in blank spaces with basic information and was the sole signatory. (Docket No. 38-3 at 1.) Additionally, while the parties did strike through the "Unconditional Personal Guaranty" provision, they did not otherwise alter the form language on the Credit Application. (*See* Docket No. 38-3 at 1-2.) Alternatively, both Iafrate and IMI signed the Purchase Order and made several handwritten and initialed changes to the form language. (Docket No. 38-2 at 2-4.) The Purchase Order contains specific terms regarding the required materials and the place of shipment. (Docket No. 38-2 at 1.) The Purchase Order

also has a "Notes" section that provides specific requirements for the performance of the contract. *Id.* The requirements in the "Notes" section are particular to this transaction and not preprinted form language. *See id.* The Purchase Order contains terms that were expressly bargained for as is evidenced by the handwritten additions to the preprinted form language and the non-form, transaction specific language in the "Notes" section. (*See* Docket No. 38-2 at 1-4.) Most importantly, neither party disputes the applicability of the arbitration provision in the Purchase Order. (*See* Docket Nos. 38-1; 42; 43.) Iafrate argues in its Motion to Compel Arbitration that both arbitration provisions apply, overlooking the inherent conflict between the provisions, and IMI appears to accept the validity of the arbitration provision in the Purchase Order as it argues in its Response to Iafrate's Motion that Iafrate has explicitly waived its right to arbitrate under the provision. (Docket Nos. 38-1 at 4-8; 42 at 1-2.) Through an analysis of the documents comprising the contract between IMI and Iafrate and the parties own characterization of their agreement through the course of this litigation, this Court finds that the arbitration provision in the Purchase Order controls as this appears to be the intention of the parties.

Having determined that the arbitration provision in the Purchase Order will apply in this action, the Court now looks to whether or not Iafrate may compel arbitration under the provision. The Purchase Order's arbitration provision states the following:

> Seller agrees that the Buyer shall have the exclusive right to decide whether disputes, controversies, or claims arising out of or relating to this Purchase Order shall be settled in accordance with the rules of the American Arbitration Association *or* through litigation in a court of competent jurisdiction.

(Docket No. 38-2 at 4) (emphasis added). IMI argues that Iafrate waived its right to arbitration when it sent a letter to IMI on January 13, 2015 stating:

> [T]he purchase order between Angelo Iafrate Construction Company and IMI permits Angelo Iafrate to choose the forum of any formal dispute resolution proceedings between them. It hereby chooses litigation in the Macomb County, Michigan Circuit Court. Angelo Iafrate Construction Company's payment bond surety, CNA, hereby makes the same choice.

(Docket No. 42-1 at 1.)

11

Though "[t]here is a strong presumption in favor of arbitration, and . . . waiver of the right to arbitration is not to be lightly inferred," *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003) (quoting *Cotton v. Slone*, 4 F.3d 176, 179 (2d. Cir. 1993)), a party may waive the right to arbitration either *explicitly or implicitly* by its actions. *Gordon v. Dadante*, 294 F. App'x. 235, 238 (6th Cir. 2008). A party implicitly waives the right to arbitration "by failing to assert it or by participating in litigation to such an extent that its actions are 'completely inconsistent with any reliance' on this right and cause the opposing party to suffer prejudice." *Id.* (citing *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002)). Even though a waiver of a party's right to arbitration is not to be "lightly inferred," there is no question in this case that Iafrate explicitly waived its right to arbitrate in its letter to IMI in which it unequivocally elected to litigate in Macomb County, Michigan Circuit Court.[1] (Docket No. 42-1 at 1.) Iafrate had the exclusive right to choose either arbitration or litigation in a court of competent jurisdiction, and it chose to litigate. *See id.* Iafrate's election to litigate operated as an explicit waiver of its right to proceed by arbitration. The Sixth Circuit has recognized that when a party has a choice between arbitration and litigation, "the two methods [are] inconsistent enough to require an election between them." *Am. Locomotive Co. v. Gyro Process Co.*, 185 F.2d 316, 320 (6th Cir. 1950). Furthermore, the court stated that "a waiver, partaking of the principle of an election, like an election needs no consideration, and cannot be retracted." *Id.* Though the party seeking arbitration in *American Locomotive Co.* waived its right to arbitration implicitly, the court's analysis is still pertinent here. *See id.* at 317-20. The Sixth Circuit found that the party's "actions constituted an election" to litigate the case in Federal District Court and therefore "operated as a waiver of its right to proceed by arbitration." *Id.* at 320-21. Here, Iafrate's letter to IMI electing to litigate in Michigan Circuit Court serves as an explicit waiver of its right to arbitration.[2]

---

[1] Iafrate cites multiple cases in its Reply to IMI's Response to its Motion to Compel Arbitration that concern the implicit waiver of a party's right to arbitration. (Docket No.43 at 3-4.) Those cases are distinguishable from this action because Iafrate explicitly waived its right to arbitration when it elected to litigate the matter.

[2] Iafrate argues in its Motion to Compel Arbitration that Continental Insurance Company, as payment bond surety, can "avail themselves of the arbitration agreement" as a non-signatory to the contract. (Docket No. 38-1 at 9.)

In its Reply to IMI's Response, Iafrate suggests that its choice to litigate is qualified by its stated preference to litigate in Macomb County, Michigan Circuit Court. (Docket No. 43 at 2.) But, the arbitration provision does not give Iafrate the right to choose the forum of the litigation. The clause gives Iafrate the right to choose between arbitration or litigation not the location of the litigation. The agreement states that "[b]uyer shall have the exclusive right to decide whether disputes, controversies, or claims arising out of or relating to this Purchase Order shall be settled in accordance with the rules of the American Arbitration Association *or through litigation in a court of competent jurisdiction*." (Docket No. 38-2 at 4 (emphasis added).) There is no forum selection clause contained within the arbitration provision or anywhere else in the agreement between the parties. (*See* Docket Nos. 38-2; 38-3.) Even if it was somewhat unknowingly, IMI complied with Iafrate's election to litigate when IMI filed this action on January 13, 2015 which was the same day that Iafrate sent IMI the letter choosing to litigate. (Docket Nos. 42-1 at 1; 43-1 at 3.) Iafrate's choice to litigate does not limit or control IMI's right to choose the forum. Though it is "some 600 miles away" from where Iafrate expressed its desire to litigate, this Court is a "court of competent jurisdiction." (Docket Nos. 38-2 at 4; 43 at 2.) This Court has subject matter jurisdiction through diversity of citizenship as the Plaintiff IMI is an Indiana Corporation with its principal place of business in Indiana and Defendant Iafrate is a Michigan Corporation with its principal place of business in Michigan, and Defendant Continental Insurance Company is incorporated in Pennsylvania and its statutory home office is in Pennsylvania. There is complete diversity among the parties and the amount in controversy exceeds $75,000 in accordance with 28 U.S.C. § 1332(a).

Therefore, because the Court is finds that Iafrate has explicitly waived its right to arbitration, Iafrate's Motion to Compel Arbitration is denied.

---

Iafrate waived its right to arbitration, and Iafrate's waiver of arbitration binds Continental Insurance Company as well. The Sixth Circuit has previously stated that "as a derivative claimant, a third party's right to enforce a contract cannot rise higher than the rights of the contracting party through whom he claims . . . because the beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract." *Joint Admin. Comm. of Plumbing & Pipefitting Indus. in Detroit Area v. Washington Grp. Int'l, Inc.*, 568 F.3d 626, 631 (6th Cir. 2009) (citations omitted) (internal quotation marks omitted).

**CONCLUSION AND ORDER**

For the reasons enumerated above, Defendants' Motion to Compel Arbitration, (Docket No. 38), is DENIED.

cc: counsel of record